No. A-CV-14-88

# Supreme Court of the Navajo Nation

**Max Taylor, et al., Applicants,**

**v.**

**The Honorable Evelyne E. Bradley, et al., Respondents.**

**Decided August 31, 1989**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Gary E. LaRance, Esq., Tuba City, Arizona; Michael P. O'Connell, Esq., Kykotsmovi, Arizona; and Mary Gabrielle Sprague, Esq., Denver, Colorado, for the Applicants; and Peter J. Osetek, Esq., Tuba City, Arizona, for the Respondents.

Opinion delivered by AUSTIN, Associate Justice.

This case comes before the Court on a petition for a writ of prohibition to the Tuba City District Court. The issue is whether the Tuba City District Court has civil jurisdiction over an action arising within the Moencopi Administrative Unit. We hold that the Navajo Nation court has jurisdiction and deny the petition.

### I

Respondents/plaintiffs, Joe Sloan and Vera George, are enrolled members of the Navajo Tribe. Respondents sued applicants/defendants, who are all officers of the Hopi Department of Range and Livestock, in the Tuba City District Court of the Navajo Nation for conversion of sixteen head of goats. The goats were allegedly trespassing on lands of residents of the Village of Moencopi located within the Moencopi Administrative Unit. The applicants seized the goats on July 24, 1987 and they transported the goats to the Village of Oraibi on the Hopi Reservation.

The Moencopi Administrative Unit and its counterpart, the Tuba City Administrative Unit, are adjoining parcels included in land called the "Bennett Freeze" area within the 1934 Act Reservation. Congress passed the 1934 Act to define the exterior boundaries of the Navajo Reservation in Arizona. The 1934 Act essentially set aside a reservation "for the benefit of the Navajo and such other Indians as may already be located thereon." Act of June 14, 1934, 48 Stat. 960. Litigation pending in the federal court will determine the extent of the

_147_

Navajo and Hopi Tribes' interests in the 1934 Act Reservation. *Sidney v. MacDonald*, No. 74-842 PHX EHC (D. Ariz.).

In 1966, Robert L. Bennett, Commissioner of Indian Affairs, imposed a construction freeze (Bennett Freeze) within the 1934 Act Reservation in recognition of an unidentified Hopi interest in the 1934 Act Reservation. The boundaries of the freeze area have since been modified. As a result of the freeze, mutual consent by the Navajo and Hopi Tribes is required before either tribe may affect land within the Bennett Freeze area. The two administrative units are excepted from the consent requirement. No Navajo consent is needed for the Hopis to affect land within the Moencopi Administrative Unit, except for well drilling, and the same is true for the Navajo Tribe in the Tuba City Administrative Unit.

Applicants moved to dismiss the suit arguing that no Navajo Nation court had jurisdiction over an action which arose within the Moencopi Administrative Unit. The district court found that the goats were seized within the Moencopi Administrative Unit, which was within the exterior boundaries of the Navajo Reservation, and ruled that the Moencopi Administrative Unit was within the jurisdiction of the Tuba City District Court.

Applicants then petitioned this Court to issue a writ of prohibition to the Tuba City District Court, prohibiting that court from proceeding to determine the merits of *Sloan v. Taylor*, No. TC-CV-317-87, and ordering that court to dismiss the action for lack of jurisdiction. We granted an alternative writ of prohibition and ordered respondents to show good cause why the writ should not be made permanent.

## II

We initially consider respondents' argument that the petition should be denied at the outset because the applicants have a remedy by appeal. In *McCabe v. Walters*, 5 Nav. R. 43, 47 (1985), this Court said: "A Writ of Prohibition is a discretionary writ and is appropriately issued where the trial court is proceeding without or in excess of its jurisdiction ... and Petitioner has no plain, speedy and adequate remedy at law." (citation omitted). In rare cases, this Court may decide the jurisdictional issue on a petition for a writ of prohibition despite the apparent availability of a plain, speedy and adequate remedy at law. *See Yellowhorse, Inc. v. Window Rock District Court*, 5 Nav. R. 85, 86 (1986). To invoke this exception, the applicant must show the unique nature of the case and the extraordinary circumstances under which it is brought.

The issue of conflicting tribal jurisdiction within the boundaries of the same reservation presents a unique and difficult question of law and equity. The district court had no guidance and the issue is one of first impression in the Navajo courts. The jurisdictional uncertainty brought on by federal action in the Moencopi Administrative Unit currently plagues the Navajo and Hopi Tribes, the Navajo and Hopi courts, and the citizens of the area. This uncertainty may fur-

ther contribute to tension in the area. The case is unique and extraordinary circumstances are present to justify deciding the jurisdictional issue presented by the applicants.

## III

### A

Tribal civil jurisdiction is derived from a tribe's retained inherent sovereignty. *Deal v. Blatchford*, 3 Nav. R. 158 (1982). The Navajo Nation's declaration of civil jurisdiction is found in 7 N.T.C. § 253(2) (1985). That section gives the Navajo Nation district courts original jurisdiction over: "All civil actions in which the defendant ... has caused an action to occur within the territorial jurisdiction of the Navajo Nation."

The Navajo courts have civil jurisdiction over all persons who cause an action to occur in Navajo Indian Country. *Window Rock Mall v. Day IV*, 3 Nav. R. 58, 59 (1981); *Deal v. Blatchford*, 3 Nav. R. 159 (1982); *Billie v. Abbott*, 6 Nav. R. 66 (1988). Navajo Indian Country is "defined as all land within the exterior boundaries of the Navajo Reservation...." 7 N.T.C. § 254 (1985). Navajo Indian Country makes up the Navajo courts' territorial jurisdiction.

Respondents argue that if the situs of the alleged incident is within the exterior boundaries of the Navajo Indian Reservation, Navajo Nation courts can exercise general civil jurisdiction. Applicants counter by arguing that the implication of respondents' argument is that Navajo Indian Country would also include lands within the 1882 Executive Order Reservation in which the Hopi Tribe holds exclusive interest, simply because they lie within the exterior boundaries of the Navajo Indian Reservation.

Applicants' argument is meritless. The legislative history of the Navajo Nation's territorial jurisdiction statute shows that the Navajo Nation disclaimed jurisdiction over land the Hopi Tribe held in exclusive interest. While the Navajo Tribal Council reviewed the Navajo Nation's territorial jurisdiction statute, it was advised that the statute is not "intended to assert Navajo jurisdiction over the lands of the Hopi Indian Reservation insofar as to do so would be inconsistent with federal laws." Navajo Tribal Council Res. CJY-57-85, Exhibit A, passed July 25, 1985 (prepared remarks of attorney Elizabeth Bernstein). However, reading 7 N.T.C. § 254 as including the Moencopi Administrative Unit within its definition of Navajo Indian Country is *not* inconsistent with federal law. The Moencopi Administrative Unit lies within the exterior boundaries of the Navajo Indian Reservation *and* it has yet to be decided that the Hopi Tribe holds an *exclusive* interest in the lands.

B

Applicants concede there has been no determination of an exclusive Hopi interest in the lands within the Moencopi Administrative Unit and that the district court was correct in concluding that Congress has not established a permanent Hopi reservation within the Moencopi Administrative Unit. Applicants argue, however, that the district court erred in failing to recognize that Congress has established a temporary exclusive Hopi reservation within the Moencopi Administrative Unit pending final judgment in *Sidney v. MacDonald*, No. 74-842 PHX EHC. A congressional intent to set aside the Moencopi Administrative Unit as a temporary exclusive Hopi reservation, within the exterior boundaries of the Navajo Reservation, would have been expressed in the statutes dealing with the Navajo and Hopi land dispute: the Act of June 14, 1934, 48 Stat. 960. ("1934 Act"), the Act of December 22, 1974, 88 Stat. 1712, 25 U.S.C. §§ 640d *et seq.* (1982) ("1974 Settlement Act"), or Section (3) of the Navajo-Hopi Relocation Amendments Act of 1980, 94 Stat. 929, 25 U.S.C. § 640d-9(f) (1982) ("1980 Amendments Act"). None of these statutes support such a conclusion.

By the Navajo Treaty of 1868, 15 Stat. 667, the United States granted the Navajos a reservation in the northeast corner of Arizona. This reservation was gradually expanded. The lands at issue here were withdrawn by executive order in 1900. Exec. Order of January 8, 1900. These lands, together with other executive order withdrawals from 1880 to 1918, became known as the Navajo Reservation. *See, Sekaquaptewa v. MacDonald*, 619 F.2d 801 (9th Cir. 1980). The "1934 Act" defined the exterior boundaries of the Navajo Reservation in Arizona. The Act provided that the lands were permanently withdrawn, "for the benefit of the Navajo and such other Indians as may already be located thereon."

> Congress did not identify Navajo-Hopi boundaries in the "1934 Act." The Hopis would not agree to boundaries proposed by the administration, and Congress was unwilling to force the issue. The Hopis lobbied to protect *what they thought was theirs*. This resulted in the exemption of the 1882 Reservation from the "1934 Act" and the such other Indian language.

*Id.* at 807 (emphasis added). Congress, in the 1934 Act, did not disturb then-existing land tenure patterns, but left it up to the two tribes to come to an amicable solution or until further congressional action was taken.

The tribes were unable to work out cooperative arrangements and in 1974 Congress authorized both tribes to sue in the federal district court, "for the purpose of determining the rights and interests of the tribes in and to such lands [covered by the "1934 Act"] and quieting title thereto in the tribes." 25 U.S.C. § 640d-7(a).

The Hopi Tribe brought suit pursuant to this section in the United States District Court for Arizona. The federal district court concluded that the Navajos had an undivided one-half interest in lands occupied by the Hopi in 1934, and exclusive trust title in all other 1934 Act Reservation lands. *See, Sekaquaptewa v.*

*MacDonald*, 448 F. Supp. 1183 (D. Ariz. 1978), *aff'd in part and rev'd in part*, 619 F.2d 801 (9th Cir. 1980). The Ninth Circuit reversed in part, holding Hopi interests exclusive in land they actually and exclusively "possessed, occupied, or used" in 1934. *See id.* The case was remanded to determine what land the Hopis "possessed, occupied, or used" in 1934. That determination is still pending. *Sidney v. MacDonald*, No. 74-842 PHX EHC. Significantly, the Ninth Circuit stated,

> In doing so [remanding], we acknowledge the possibility that some reservation land, grazing land for instance, may have been used by both tribes in 1934. *Even in villages it may not be possible for the court to conclude that the Hopis "possessed, occupied, or used" such land exclusively.* In that event it may be proper on remand for the district court to declare title to be joint or undivided, subject to partition.

619 F.2d at 809.

This Court acknowledges the United States District Court's determination that the Hopi Tribe has a present equitable interest in, as yet undefined, lands within the exterior boundaries of the 1934 Navajo Reservation. *See Sekaquapetewa v. MacDonald*, 448 F. Supp. at 1193. We also note that the federal district court took judicial notice of the fact a Hopi village existed at Moencopi on June 14, 1934. *Id.* It does not follow, however, that a Hopi reservation, temporary or otherwise, exists within the Moencopi Administrative Unit and consequently that the Hopis have exclusive jurisdiction in the area. Quite the contrary. The possibility exists that the Hopis have *no* exclusive interest in any part of the 1934 Act Reservation. The Hopis do not presently have exclusive jurisdiction over the Moencopi Administrative Unit. The nature and extent of Hopi interest within the boundaries of the Navajo Reservation as defined in the "1934 Act" lacks concrete form and cannot serve as a basis for the applicants' claim of exclusive Hopi jurisdiction.

What the "status quo" was in 1934 is still subject to determination. What is clear is that the allocation of land to respective tribes upon determination of interests is prescribed in 25 U.S.C. § 640d-7(b). It states in pertinent part:

> Lands, if any, in which the Navajo Tribe ... are determined ... to have the exclusive interest shall continue to be a part of the Navajo Reservation. Lands, if any, in which the Hopi Tribe ... are determined ... to have the exclusive interest shall thereafter be a reservation for the Hopi Tribe. Any lands in which the Navajo and Hopi Tribes ... are determined to have a joint or undivided interest shall be partitioned ... and the area so partitioned shall be retained in the Navajo Reservation or added to the Hopi Reservation, respectively.

The subsection of the "1974 Settlement Act" quoted above uses only prospective language in discussing the Hopi Tribe's claims. There is no evidence Congress understood any of the Navajo Reservation to already be exclusive Hopi territory. Rather, the prospective language of 25 U.S.C. § 640d-7(b) suggests that Congress viewed the lands within the boundaries of the "1934 Act" as Navajo Reservation until the United States District Court decided otherwise. *See also*, 25

U.S.C. § 640d-9(b) (lands to be held in trust for Hopi Tribe following determination and allocation).

In passing the "1974 Settlement Act" in the form it did, Congress declined an opportunity to define an area of exclusive jurisdiction around Moencopi village. Earlier drafts included a section 7 (later section 8) which detailed an area around Moencopi contiguous to the Hopi Reservation. See H. R. Rep. No. 93-909, 93d Cong., 2d Sess. 2 (1974). Any weight given to references, by applicants, to Senate and House reports is diminished by the fact that the bill that finally passed was substantially unlike the bill considered in those reports.

The "1974 Settlement Act" does not express a congressional intent to establish a temporary exclusive Hopi reservation within the Moencopi Administrative Unit. It therefore does not support the applicants' claim of exclusive Hopi jurisdiction in the area.

Applicants' assertion that the "1980 Amendments Act," supports their claim of exclusive jurisdiction within the Moencopi Administrative Unit likewise fails. Applicants argue that 25 U.S.C. § 640d-9(f) supersedes 25 U.S.C. § 640d-7(b) and satisfies the requirement that only Congress can create a reservation. Applicants attempt to transform the inchoate Hopi equitable interest found in *Sekaquaptewa v. MacDonald*, 448 F. Supp. 1183, into creation of a Hopi reservation coinciding with the Moencopi Administrative Unit.

Section 640d-9(f) adopted earlier actions taken by then Commissioner of Indian Affairs, Robert L. Bennett, in part to protect alleged Hopi interests in natural resource development in the area that is known as the "Bennett Freeze" area. The "Bennett Freeze" ended unilateral Navajo development within that portion of the reservation. This action was later modified by the Assistant Secretary of the Interior, Harrison Loesch, to return sole control to the Navajo Nation within the area designated as the Tuba City Administrative Unit and to give the Hopi Tribe the exclusive right to administer development within the area designated as the Moencopi Administrative Unit. A Hopi reservation cannot, therefore, be implied from Congress' specific narrow grant of control over development in the Moencopi Administrative Unit.

Applicants urge that judicial, legislative and executive powers are generally coextensive. Nonetheless, a distinction is made in the field of Indian law between governmental power to tax or regulate and the power to adjudicate. Public Law 280, for example, while giving certain states power to adjudicate civil controversies arising in Indian Country, does not permit those states to exercise their full powers of taxation or regulation there. *See, e.g., Bryan v. Itasca County*, 426 U.S. 373 (1976); *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). Even when Public Law 280 does not apply, the United States Supreme Court tends to treat the issues of taxation and regulation somewhat differently than adjudicatory jurisdiction. *Cf., Williams v. Lee*, 358 U.S. 217 (1959); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164 (1973).

Applicants contend that although 25 U.S.C. § 640d-9(f) only addresses devel-

opment, it does not defeat their claim of exclusive jurisdiction. They argue that it would be inconsistent on the one hand for Congress to acknowledge the right to exclusively control development and on the other to intend that the Navajo Nation's jurisdiction over the Moencopi Administrative Unit to be otherwise unlimited. The narrow issue before this Court is judicial jurisdiction. Applicants' apprehension that a holding of Navajo jurisdiction could result in Navajo regulatory authority over the area frustrating Congress' grant of control over development to the Hopi Tribe is unconvincing. Applicants equate judicial jurisdiction with the right to govern; respondents do not. No evidence was presented which suggests the Navajo Nation has ever asserted a right to govern the Village of Moencopi. This Court's holding today is not intended as such an assertion.

The control over development within the Moencopi Administrative Unit, granted to the Hopi Tribe by Congress, is analogous to the administrative power of a municipality. The United states Supreme Court has stated, "[n]either the United States, nor a state, nor any other sovereign loses the power to govern the people within its borders by the existence of towns or cities therein endowed with the usual powers of municipalities...." *Merrion v. Jicarilla Apache Tribe*, 445 U.S. 130 (1982) (quoting *Buster v. Wright*, 135 F. 947, 952 (8th Cir. 1905), *appeal dism'd*, 203 U.S. 599 (1906)).

Congress, by enacting 25 U.S.C. § 640d-9(f), expressed no intent to establish a temporary exclusive Hopi reservation within the Moencopi Administrative Unit, nor to divest the Navajo Nation courts of civil adjudicatory jurisdiction over causes of action arising within that same area.

No "magic words" are necessary to establish a reservation. But congressional intent, if not express, must be implied by the language and purpose of the legislation. It takes an unacceptable leap of logic to read 25 U.S.C. § 640d-9(f) as creating a temporary exclusive Hopi reservation within the Moencopi Administrative Unit. The language expresses an interim grant of administrative control over the area, the purpose of which is to facilitate development in the area.

Applicants suggest that Congress exercised restraint in wording section 640d-9(f) so as not to infringe on the authority delegated to the United States District Court. But, given this delegation of authority, it is unlikely that Congress would subsequently create a Hopi reservation within the Moencopi Administrative Unit and not inform the federal court it was doing so and that its authority was being modified. The "1980 Amendments Act" in no way rescinds or modifies that authority.

## C

Applicants argue that the Secretary of Interior has granted exclusive jurisdiction to the Hopis through his power to mediate the conflicting claims by the Hopi Tribe and the Navajo Nation. It may be that the Secretary has authority to promulgate regulations pursuant to the federal government's trust responsibility to the tribes. *See* 25 U.S.C. §§ 2 and 9. But, as the court pointed out in *Northern*

*Arapahoe Tribe v. Hodel*, 808 F.2d 741 (10th Cir. 1987), federal executive officials are limited to the authority conferred on them by Congress. "The rulemaking power granted to an administrative agency ... is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress...." *Id.* at 748.

In 1918, Congress assumed exclusive authority to add to or create reservations in Arizona. Act of May 25, 1918, 40 Stat. 570, 25 U.S.C. § 211. Absent a specific authorization by Congress, the Secretary of Interior cannot establish a reservation. (25 U.S.C. § 467 provides exceptions to this rule and applies to limited situations not present here.) There is no applicable statute authorizing the Secretary to establish a Hopi reservation within the exterior boundaries of Navajo Indian Country as defined by the "1934 Act," nor to mediate conflicting claims of jurisdiction by the Navajo Nation and Hopi Tribe. The actions of the Secretary of Interior in delineating boundaries for purposes of control over development cannot rise to the level of creating a reservation within the Moencopi Administrative Unit even assuming, *arquendo*, that the Secretary has the authority.

The results in *Healing v. Jones*, 210 F. Supp. 125 (D. Ariz. 1978), *aff'd* 373 U.S. 758 (1963), do not alter this result. The *Healing* court held that 25 U.S.C. § 211 did not terminate the Secretary of Interior's powers to settle Indians on the 1882 Executive Order Reservation as he saw fit. The decision has no bearing on the present situation, however, because the language creating the 1882 Executive Order Reservation and "1934 Act" Reservation is so different. The former specifically grants authority to the Secretary of Interior; reference to the Secretary's power is entirely missing in the latter.

Applicants seek to bolster their position that the Secretary of Interior granted exclusive jurisdiction to the Hopis by arguing that the Secretary's approval of the Hopi Constitution and subsequent Hopi ordinances, which cover the Village of Moencopi, expresses the Department of Interior's position that the Village of Moencopi is part of the Hopi Reservation. Federal courts do give the Secretary of Interior great deference in managing Indian affairs, *see, California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), but the law remains that a tribe in Arizona has no power to add to its reservation simply by claiming an area and subsequently seeking and receiving Secretarial approval of that claim. That power rests exclusively with Congress. 25 U.S.C. § 211.

D

Lastly, applicants argue that exclusive jurisdiction is an inherent power the Hopis exercise as a sovereign nation in the Moencopi Administrative Unit. The Indian Claims Commission, in an action brought by the Hopi Tribe against the United States, held that Hopi aboriginal title to all lands outside the 1882 Reservation was extinguished when the Executive Order of December 16, 1882 was issued. *Sekaquaptewa v. MacDonald*, 448 F. Supp. at 1188. Consequently, any inherent authority the Hopi Tribe may have had ended with respect to lands

outside the 1882 Hopi Reservation.

Arguably the Hopis may have regained some measure of authority by virtue of their equitable interest in lands within the exterior boundaries of the 1934 Navajo Reservation. But a present equitable interest, in as yet undefined lands, does not support a claim of exclusive jurisdiction over those lands. Recognized title and consequent exclusive jurisdiction, if any, will follow from the federal court's final determination in *Sidney v. MacDonald*, No. 74-842 PHX EHC.

The results in *Healing v. Jones*, 210 F. Supp. 125, are instructive. Although *Healing* recognized the Navajo Nation's interest in the 1882 Executive Order Reservation as Indians the Secretary had seen fit to settle thereon, tribal *jurisdiction* over the area did not follow until almost twenty years later, when Congress enacted 25 U.S.C. § 640d-9(e) (1) (B). This section gave "each tribe [Navajo or Hopi] jurisdiction and authority over any lands partitioned to it and all persons located thereon." *Id.* The Navajo Nation retains jurisdiction over lands within its exterior reservation boundaries until such time as it is specifically divested of such jurisdiction by Congress.

## IV

Applicants have not established that Congress has created a temporary exclusive Hopi Reservation within the Moencopi Administrative Unit. Thus, their claim of exclusive jurisdiction over that area fails. Nor have they shown that the Navajo Nation courts have been divested of their jurisdiction over civil actions which occur within the Moencopi Administrative Unit. However, because the Hopi Tribe does have an equitable, but undefined, interest in lands defined in the "1934 Act," and Moencopi is inhabited predominately by Hopis, this Court holds as a matter of comity and of mutual respect that both tribes have concurrent jurisdiction over the Moencopi Administrative Unit for the time being.

The peoples of the Navajo Nation and of the Hopi Tribe share a history of mutual respect. The Navajos and Hopis have long lived side by side, using the same lands, trading with one another, and intermarrying. This commingling formed lasting bonds of friendship between the two peoples. In practice, the Hopis of Moencopi Village have used the Tuba City District Court to adjudicate their civil disputes. The Hopis from this Village also use the Hopi courts located on the Hopi Reservation. The idea of concurrent jurisdiction is, therefore, not new to the Moencopi Administrative Unit. Concurrent jurisdiction is imbedded in past practice. The Tuba City District Court has jurisdiction to determine the merits of *Sloan v. Taylor*, No. TC-CV-317-87.

This holding applies only to the narrow issue of judicial jurisdiction and only to that area known as the Moencopi Administrative Unit. Nothing in this opinion shall be deemed to be a determination of the merits of conflicting claims to the lands that are the subject of litigation in *Sidney v. MacDonald*, No. 74-842 PHX EHC.

The petition for writ of prohibition is denied.